WILLIAM McCORMICK, Appellant, *v.* UNITED LIFE AND ACCIDENT INSURANCE ASSOCIATION, Respondent.

*"Club" insurance — false representations — a defense to an action brought by a club member — evidence inadmissible under section* 834 *of the Code of Civil Procedure.*

An insurance company issued to certain persons, associated as members of a "club," ten policies of insurance by which it agreed to pay to the several individuals to whom the policies were issued and to the members of such club "in equal proportion to those who have kept their certificates in force, if living; if not, then to the heirs at law of said member, within ninety days after due proof of the death of said member, a sum equal to the amount received from a death assessment, but not to exceed the sum of $5,000."

Among other conditions contained in such policy was the following:

"*First*. That the statements and declarations made by and on behalf of said member, in his application to become a member of said association, which are hereby referred to as the basis of this contract, and are a part thereof, and on

the faith of which this certificate is issued, are in all respects true, and that no fact has been suppressed relating to his health or circumstances affecting the interests of said association or their inducement to accept the risk."

*Held,* that a breach of warranty or a false representation on the part of the deceased insured was a defense to an action brought by any one of the living members of the club to enforce his rights under his policy, inasmuch as any member of the club stood in the same position as the representatives of a deceased member, and an action in his behalf was subject to the same defenses that an action would be, brought by the wife or heirs of the deceased.

Upon the trial of an action brought upon a life insurance policy, where the defense is that the policy was vitiated by reason of a disease which the assured had at the time of the issuing of the policy of insurance to him, it is error, under section 834 of the Code of Civil Procedure, to permit the insurer to show by physicians who had professionally treated the insured that they had treated him for some time anterior to the date of the policy, and that they were specialists and competent to treat cancers and diseases of the tongue and throat, the disease which caused the death of the assured.

When no question of fact arose upon the trial of an action in regard to an issue to which incompetent evidence, improperly admitted, was relevant, the judgment rendered in such action against the party objecting to the admission of such evidence will not be reversed on appeal by reason thereof.

APPEAL by the plaintiff, William McCormick, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of March, 1893, upon the verdict of a jury, directed by the court, dismissing the plaintiff's complaint after a trial at the New York Circuit, and also from the interlocutory judgment entered in said clerk's office on the 15th day of March, 1893, and also from the order entered in said clerk's office on the 7th day of March, 1893, denying the plaintiff's motion for a new trial made upon the minutes.

This action was brought by one of a club of ten members to whom policies of like tenor and effect were issued which provided that on the death of any member a certain proportion of the amount realized on an assessment should be paid to the wife or heirs at law of the deceased and to each surviving member of the club who had kept his certificate of insurance in force.

The defendant is a corporation incorporated prior to February 8, 1886, under chapter 175 of the Laws of 1883, entitled "An act to provide for the incorporation and regulation of co-operative or assessment life and casualty insurance associations and societies."

On the 8th day of February, 1886, William H. Story applied to the defendant, in writing, for insurance to the amount of $10,000, $5,000 under a policy known as club insurance and $5,000 under a policy known as the regular life policy. The application contained, among others, the following inquiries to and answers given by the applicant.

" 8. Are you now in good health, and is your health usually good ? Ans. Yes.

" 9. Have you ever had any serious illness, local disease or personal injury ? If yes, state nature, date, duration and severity of attack ? No.

" 12. Have any material facts regarding your past health or present condition been omitted ? State facts fully ? No.

" 13. Name and residence of your medical attendant ? Dr. Ruppaner, Hoffman House."

On the 9th of February, 1886, the defendant issued a club policy on said application to William H. Story, which contains the following provision :

" By this policy of insurance (defendant) agrees to pay. to William H. Story and members of club No. 7, in equal proportion to those who have kept their certificates in force, if living ; if not, then to the heirs at law of said member, within ninety days after due proof of the death of said member, a sum equal to the amount received from a death assessment, but not to exceed the sum of $5,000."

Among other conditions contained in the policy is the following :

" *First.* That the statements and declarations made by and on behalf of said member, in his application to become a member of said association, which are hereby referred to as the basis of this contract, and are a part thereof, and on the faith of which this certificate is issued, are in all respects true, and that no fact has been suppressed relating to his health or circumstances affecting the interests of said association or their inducement to accept the risk."

·The application was received, accepted and the policy issued on the 9th of February, 1886, but the insured did not pay the premium until May 18, 1886, when the policy was delivered to him. Prior to February 27, 1886, the defendant issued nine other such policies to persons who were associated as members of club No. 7, one of which was issued February 9, 1886, to the plaintiff for $5,000.

The policies issued to the ten persons constituting club No. 7 were in all respects alike.

It was admitted that William H. Story died November 1, 1886, due proof of which was filed with defendant March 1, 1887, and that the death assessment made on account of the policy and said death exceeded the sum of $5,000.

It was alleged in the complaint that only six members of said club, who had kept their policies in force, one of whom was the plaintiff, survived William H. Story, and that plaintiff was entitled to recover one-seventh of $5,000, $714.28, with interest from March 1, 1887.

This action was begun August 25, 1887, to recover a judgment, (1) that the policy be reformed so as to provide in accordance with the alleged agreement between the parties, omitted from the policy by mutual mistake, as follows : " That upon the death of any member of said club No. 7, there should be paid a death assessment in equal proportions to the wife of the deceased member and to the surviving members of club No. 7 who had kept their policies in force," a sum equal to the amount received from a death assessment, not to exceed the sum of $5,000 ; and (2) for $714.28, with interest from March 1, 1887.

The issue, whether the policy should be reformed, was tried before the court without a jury, and the relief sought denied on the ground that the policy, if reformed in accordance with the prayer of the plaintiff, would be prohibited by law and void, and an interlocutory judgment was entered in accordance with the decision. At the same Circuit the issue, whether the plaintiff was entitled to recover any sum, was tried before a jury ; at the close of the evidence a verdict was directed for the defendant and a motion for a new trial made on the minutes was denied, and from this order and the judgment entered on the verdict, and also from the interlocutory judgment, the plaintiff appeals.

*J. Aspinwall Hodge, Jr.,* for the appellant.

*Harry Wilber,* for the respondent.

FOLLETT, J. :

Construing the ten policies issued to the ten persons forming club No. 7, and the club circular (Exhibit A) explanatory of the defend-

ant's plan of club insurance together, the legal effect of the contract of insurance is as alleged in the complaint, and the reformation of the policy in accordance with the prayer of the plaintiff would not affect the rights of the litigants. It is not alleged in the answer that the contract set out in the complaint is a wager policy, or that it is for any cause void under the laws of the State, and on the trial the defendant expressly waived this defense.

As a defense it is alleged in the answer that the answers given to questions 8, 9 and 12 were untrue, and that William H. Story was not at the time the insurance was effected in good health, but was suffering from a disease of the throat and tongue from which he died, which disease he concealed from the defendant. A breach of warranty or false representations on the part of the insured is a defense to an action brought by any one of the members of the club to enforce his rights under the ten policies, as a member of the club stands in the same position as the representatives of a deceased member, and an action in his behalf is subject to the same defenses that an action would be brought by the wife or heirs of the decedent. On the trial of this action the defendant sought to show that William H. Story died of cancer of the tongue, and that he had this disease at the date of his application for the policy. One of his partners (Mr. Hancock) testified that Story sailed for Europe May 18, 1886, and returned to New York about the middle of August of the same year, and while absent his tongue had been removed. This witness testified: "Before he went to Europe I looked at his tongue; I presume I saw it half a dozen times; I knew for two or three years, not that he had any disease of the tongue, but that he had a peculiar looking tongue; his tongue had a pimpular appearance; I know that it had this peculiar appearance during the period I have stated; I saw it; he showed it to me for the purpose of having me see it; his tongue had at times an appearance of having a heavy coating, and at times it would be red; no soreness apparently about it; Mr. Story said he thought the appearance of his tongue was occasioned by disordered digestion; a disordered state of the stomach; that is all the reason he ever gave for it; in regard to his smoking habits, I think he thought that aggravated the condition of his tongue; at one time he stopped smoking, and I think that was the reason of it. Q. When you discovered this redness of the tongue, on the occasion

that he showed it to you, was the entire tongue involved, or was it confined to any particular part of it? A. I don't know that there was any difference in any particular part of the tongue in this appearance. Q. Did you at any time before he went to Europe see his tongue, when you discovered that there was a sore upon it? A. Yes, I do. Q. On how many different occasions? A. Not more than twice; I don't know as more than once; once or twice. Q. How long was that before his departure? A. I should think a few days; I could not swear positively about it. No portion of his tongue had been eaten away by that sore before his departure for Europe."

Upon the cross-examination the witness testified that the sore which he saw on Story's tongue before he left was of the size of an ordinary field pea; was on the right side of and about one-half inch back of the point of the tongue, but that it had not festered. He also testified that up to the day he sailed for Europe he was a strong, powerful, robust man in excellent health, and had been peculiarly free from sickness.

Another partner of Mr. Story (Mr. Mascord) testified that the insured, prior to his sailing for Europe, appeared to be a man in vigorous health, but that just before he sailed he saw his tongue and it seemed to be inflamed, but there was no festering, no part of it gone, but it was red.

A third partner of Mr. Story (Mr. Halstead) testified that he knew Story had some trouble with his tongue prior to his sailing for Europe, and that he stated that he was going abroad in the hope of being benefited by the water of some German spring, which had been recommended by Dr. Ruppaner. This witness testified that he knew as early as January, 1886, that Story had trouble with his tongue.

That the insured died of some disease of the tongue and throat was not denied, nor was any evidence given tending to contradict that given by his partners.

The defendant's surgeon, who examined Story when he applied for insurance, testified that he appeared to be a perfectly healthy man, and free from disease, though he told him he had a pimple on his tongue, which Dr. Ruppaner said was not serious. He testified

that he examined the tip of Story's tongue, and noticed a pimple like those that people have when it is said they have told a lie. Under this state of the evidence we think there was no question of fact for the jury as to whether the insured had the disease at the date of the policy.

It is urged that the court erred in permitting three physicians, Drs. Ruppaner, Keys and Dennis, who had treated Story, to testify to certain facts. Their evidence was objected to on the ground that it was inadmissible under section 834 of the Code of Civil Procedure, which provides : " A person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity and which was necessary to enable him to act in that capacity." The objection was overruled, and an exception was taken.

Dr. Ruppaner testified that between May 28, 1885, and May 17, 1886, Story called on him for professional advice on twenty-four different occasions. The witness did not state what information he received from Story or what advice he gave him, but he did testify that all of the visits were professional, and that for twenty-six years he had made specialty of treating diseases of the throat, chest and heart, and that he had no relations with Story except professional ones.

Dr. Edward L. Keys was permitted to testify : " I have had experience in treating cancers ; been general surgeon in the hospital for fifteen years ; I have treated cancer of the tongue ; I have not had very much experience in treating those ; I have had during my practice not more than half a dozen at the outside ; not many ; I knew William H. Story in his lifetime ; I don't know anything about where he lived. I first saw him, or made his acquaintance, in my own office ; I suppose he called on me because I was a physician ; he called to consult me as such ; he made his first call in January, 1885, January 6th, I think it was, early in January ; he made six calls in my office in all ; the last call was made in March, 1885 ; none of those calls were of a social nature ; they were all made upon me as a physician ; I prescribed for him on all the occasions, I believe, when he called at my office. I remember his case, his disease particularly, becaused it interested me."

Dr. Frederick S. Dennis was called, and testified that he was a

physician, and that he saw Story professionally twice in April, 1886, and also after he returned from Europe. This witness was allowed to testify that on the occasion of his first interview with Story he examined his tongue and throat, and that for fifteen years the witness had been engaged in treating diseases of the tongue and throat.

It is urged that these physicians disclosed no information derived from Story while they were treating him in a professional capacity. While this may be technically true, we think that by permitting the defendant to show, by these witnesses, that they have treated him for some disease for a long time anterior to the date of the policy, and that they were specialists, and accustomed to treat cancers and diseases of the tongue and throat, that the spirit of the section was violated, and an error was committed in admitting this evidence over the objection of the plaintiff. But, under the state of the record, we do not think this error calls for a reversal of the judgment, for, if all of the testimony given by the physicians be stricken from the record, there remains the uncontradicted evidence of the three partners of Story, that for some months before he sailed for Europe he had been suffering from some disease of the tongue, and that after his return from Europe they saw that his tongue had been removed, and that November first he died from the effects of the disease.

The evidence not presenting a question of fact for the jury, and no question of fact arising over the issue to which the incompetent evidence was relevant, we are not called on to reverse the judgment, which should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.